```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

**JOHN BUNDY,**

       **Plaintiff,**

  vs.                                     Civil Action 2:11-CV-64
                                             Judge Sargus
                                             Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## REPORT AND RECOMMENDATION

       This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits. This matter is now before the Court on plaintiff's *Statement of Specific Errors*, Doc. No. 15, and the Commissioner's *Memorandum in Opposition*, Doc. No. 18.

       Plaintiff John Bundy filed his application for benefits on July 25, 2003, alleging that he has been disabled since June 19, 2000, following a work-related back injury. The application was denied initially and on reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

       An administrative hearing was held on January 26, 2007 and two supplemental hearings were held on April 10, 2007 and August 22, 2007. Plaintiff, represented by counsel, testified at all hearings. Michael Klein, Ph.D., testified as a vocational expert at the third hearing.

       In a decision dated August 29, 2007, the administrative law

judge found that plaintiff suffers the severe impairments of degenerative joint disease of the lumbar spine with facet arthropathy, a pain disorder associated with psychological factors and a general medical condition, and major depression.  A.R. 30.  Plaintiff's conditions neither met nor equaled a listed impairment. A.R. 35. Relying on the report of the consultative examiner, James J. Powers, M.D., the administrative law judge found that plaintiff has the residual functional capacity to perform a reduced range of light work. A.R. 36.  Referring to the vocational testimony of Dr. Klein, the administrative law judge found that, despite plaintiff's severe impairments, he can nevertheless perform a significant number of jobs in the national economy, including such jobs as hand packer, inspector and assembly worker.  A.R. 40.  Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act.

That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on December 9, 2009.  A.R. 14-16.

In his *Statement of Specific Errors*, plaintiff contends that the administrative law judge failed to properly evaluate the reports of his treating physicians, Paul Kirk, M.D., and William R. Fitz, M.D. The Commissioner responds that the administrative law judge properly evaluated the reports of Dr. Fitz and that the failure to properly consider the report of Dr. Kirk was mere harmless error.  *Memorandum in Opposition*.  The Court will consider the evidence only as it relates to these contentions.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence

and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

Dr. Kirk, a specialist in occupational medicine, *see* A.R. 164, treated plaintiff from October 2000 until June 2001. He reported to the state agency that, although a cane had not been prescribed for plaintiff, a cane was nevertheless necessary to enable plaintiff to walk. A.R. 161. June 2000 x-rays were normal. A.R. 161. A July 2000 MRI showed disc protrusions at L2-3, L1-2, L4-L5, and L5-S1. *Id*. A February 2001 EMG was normal. A.R. 159. An April 2001 MRI revealed mild degenerative disc disease at L1-2 without disc herniation or neural foraminal narrowing or stenosis. A.R. 168. According to Dr. Kirk, plaintiff's range of motion of the lumbar spine was reduced, A.R. 161, 162, although deep tendon reflexes were normal and symmetrical. Plaintiff was able to walk on heels and toes and there

3

was no atrophy. He could not arise from a squat because of pain. A.R. 162. Dr. Kirk diagnosed lumbosacral sprain for which hydrocodone had been prescribed. A.R. 163. Plaintiff's response to therapy had been poor. *Id.* Dr. Kirk evaluated plaintiff's residual functional capacity and indicated that plaintiff is "unable to sit or stand on prolonged basis." A.R. 164. He could not anticipate when plaintiff would be able to return to work. *Id*. Dr. Kirk's progress notes include a notation made in April 2001, "Cannot work," in connection with plaintiff's complaints of pain in the right lumbar area radiating to the right leg with tingling in the right foot. A.R. 167.

Dr. Kirk referred plaintiff to Douglas E. Yunker, M.D., a pain specialist. Dr. Yunker diagnosed back sprain and myofascial pain and commented that a cane was medically necessary for all ambulation, secondary to pain. A.R. 192. Although Dr. Yunker did not evaluate plaintiff's residual functional capacity, he commented on plaintiff's ability to return to work: "doubt will rehab." A.R. 193.

In October 2001, a state agency physician reviewed the evidence of record and opined that plaintiff could occasionally lift and carry 50 pounds, could stand or walk at least 2 hours in a workday and could sit at least six hours, although he must periodically alternate sitting and standing to relieve pain. A.R. 197. He should never balance or stoop. A.R. 198.

Dr. Fitz, a specialist in physical medicine and rehabilitation, administered facet injections with medial branch blocks at L3, L4 and L5, after conservative treatments had failed. A discogram performed in December 2002 failed to generate pain at the L3-L4, L4-L5 and L5-S1 levels. A.R. 212. Plaintiff continued to demonstrate limited lumbar extension; straight leg raising was positive. However, plaintiff had normal strength, sensation and

4

reflexes in both legs. A.R. 217. Dr. Fitz referred plaintiff to chronic pain management.

In August 2003, Rex Dinsmore, D.O., evaluated plaintiff in connection with plaintiff's worker's compensation claim. Plaintiff complained of numbness in the feet and low back pain. He had difficulty engaging in physical activities. A.R. 224. On clinical examination, plaintiff could not toe and heel walk; he walked with a limp and used a cane all the time. Reflexes were equal bilaterally and symmetrically; there was no muscle atrophy. Range of motion was limited on flexion to 25 degrees, on extension to 10 degrees, on left rotation to 20 degrees and on right rotation to 25 degrees. Sensation was intact. Straight leg raising was 55 degrees on the left and 50 degrees on the right. Waddell's signs were negative. A.R. 227. According to Dr. Dinsmore, plaintiff had reached maximum medical improvement and would not be able to return to his job. His "functional limitations will prevent him from all lifting, bending, prolonged standing, and walking activities. He cannot do prologed sitting due to spinal pain." A.R. 228.

In September 2003, another state agency physician reviewed the evidence and opined that plaintiff could frequently lift up to 25 pounds and occasionally lift up to 50 pounds. He could stand or walk at least two hours in a workday and sit for about six hours. There was no need to alternate between siting and standing to relieve pain. A.R. 231. Although the physician noted that plaintiff "[h]as a psych issue" and his symptoms "are partly credible," A.R. 234, the "[o]bjective evidence does not support severe restrictions in the absence of radiculopathy." *Id*.

In October 2003, Jerry E. Flexman, Ph.D., performed a consultative psychological evaluation at the request of the state

5

agency. According to Dr. Flexman, plaintiff suffers from major depression and pain disorder associated with both psychological factors and general medical condition. A.R. 238. His Global Assessment of Functioning was 50, which is indicative of serious dysfunction. *Id.*

Later that same month, Dr. Fitz administered a medial branch neurotomy in connection with plaintiff's diagnosed L4-L5 and L5-S1 facet arthropathy. A.R. 240. Dr. Fitz later noted that, although plaintiff reported that his back pain had improved, radicular leg pain had worsened a few days after the procedure. On clinical examination, plaintiff's reflexes were symmetrical, although sensation was diminished in a non-dermatomal fashion throughout the right leg. Strength testing was 5/5 with give-way. A.R. 259. Prednisone had not helped. A.R. 260. Dr. Fitz prescribed Neurontin. *Id*. A repeat MRI of the lumbar spine revealed mild bilateral facet arthropathy at L3-4 and L4-5 with a small right facet joint effusion and small 6 mm synovial cyst along the superior aspect of the right facet joint at the L3-4 level. A.R. 261.

In January 2004, Dr. Fitz administered a right L4 transforaminal epidural steroid injection, A.R. 263, which did not improve plaintiff's condition. A.R. 272. In fact, his back pain had increased. Dr. Fitz prescribed a lumbosacral arthrosis for pain control. A.R. 271. Another MRI ruled out cauda equina compression and significant neural impingement. A.R. 274.

In January 2004, Donald J. Tosi, Ph.D., reviewed the evidence of record and consultatively evaluated plaintiff's psychological condition in connection with his Workers' Compensation claim. According to Dr. Tosi, plaintiff does not suffer a pain disorder associated with both psychological factors and a general

medical condition because "[t]he injured worker's pain is physiologically rather than psychologically based."  A.R. 269.  Dr. Tosi did diagnose major depressive disorder, single episode, moderate severity, attributable to plaintiff's work related injury.  *Id*.

In February 2004, Dr. Fitz reported to the state agency that plaintiff has no neurological deficits, but only subjective changes.  His gait is antalgic.  According to Dr. Fitz, plaintiff's "pain in greater and more debilitating than objective."  A.R. 276.

In April 2004, another state agency physician reviewed the medical evidence and reaffirmed a residual functional capacity for medium work.  A.R. 279.

That same month, Dr. Fitz opined that plaintiff "will [n]ever be able to return to gainful employment."  A.R. 328.

In June 2007, after the first two administrative hearings, the administrative law judge asked Jonathan Nusbaum, M.D., a general surgeon, to review the records and respond to interrogatories.  According to Dr. Nusbaum, the medical evidence documents facet arthropathy of the lumbo-sacral spine and depression.  Neither condition meets or equals a listed impairment because the back condition involves no radiculopathy or weakness and because plaintiff had received no counseling for a mental impairment. A.R. 372.  Dr. Nusbaum opined that plaintiff has the ability to sustain the demands of competitive work on a sustained basis.  A.R. 373.  Specifically, Dr. Nusbaum opined that plaintiff could occasionally lift up to 10 pounds and frequently lift up to 5 pounds. A.R. 371.  He could sit for 6 hours throughout a workday, for 20 minutes at a time, and could stand and walk for up to 3 hours, for 15 minutes at a time, although he would need a sit/stand option.  A.R. 375.  Dr. Nusbaum specifically stated that plaintiff does not need a cane to walk and that a cane is

not medically necessary. *Id*.

In July 2007, James J. Powers, M.D., examined plaintiff at the request of the state agency and diagnosed musculoskeletal back pain. A.R. 382. He reported complaints of tenderness to palpation in the lumbar paraspinals and over the spine. Dr. Powers noted no atrophy; reflexes were present and symmetric. *Id*. Sensory testing to light touch and pin was intact. There was some limitation of motion of the dorsolumbar spine. A.R. 385. In an assessment of plaintiff's residual functional capacity, Dr. Powers opined that, because of back pain and deconditioning, plaintiff could perform a reduced range of light exertion. A.R. 387-88. He also commented that plaintiff does not require a cane to ambulate. *Id.*

As noted supra, the administrative law judge found that plaintiff's severe impairments consist of degenerative joint disease of the lumbar spine with facet arthropathy, a pain disorder associated with psychological factors and a general medical condition, and major depression. In finding that plaintiff has the residual functional capacity for a reduced range of light work, the administrative law judge commented that plaintiff's subjective complaints of pain are not supported by the objective medical evidence. The administrative law judge also adopted the assessment of Dr. Powers, the consultative examiner whose assessment was, according to the administrative law judge, "consistent with and . . . well supported by the evidence of the record as a whole," and is "similar to the limitations found by Dr. Nusbaum. . . ." A.R. 38.

The administrative law judge expressly rejected Dr. Yunker's opinion of disability because that opinion was "imprecise, inconsistent with the record as a whole, and provided a conclusion of disability that is reserved to the Commissioner." A.R. 38-39. The

8

administrative law judge rejected Dr. Dinsmore's opinion that plaintiff cannot lift, bend or perform prolonged sitting, standing or walking because it was not supported by the record or by plaintiff's own testimony regarding his daily activities and physical limitations. A.R. 39.  The administrative law judge rejected Dr. Fritz's limitations as inconsistent with the objective evidence and plaintiff's own testimony: "With those alleged limitations, the claimant would have to be a bed patient, which he is not." *Id*.  As conceded by the Commissioner, the administrative law judge made no mention of Dr. Kirk's reports and opinions.

Plaintiff alleges disability primarily because of pain. Subjective complaints of pain may support a claim for disability. *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986). However, subjective allegations of disabling symptoms, including pain, cannot alone support a finding disability.  20 C.F.R. §404.1529.  To support a claim for disability there must be objective medical evidence in the record of an underlying medical condition. *Duncan*, 801 F.2d at 853.  There must also be either objective evidence that confirms the severity of the alleged disabling pain or the objectively established medical condition must be of such severity that it can reasonably be expected to produce disabling pain.  *Id*.

The record documents an underlying back and mental impairment and all of plaintiff's treating physicians have credited plaintiff's complaints of pain.  Opinions of treating physicians must be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §404.1527(d)(2).  If the administrative law judge finds that either of these criteria have not been met, he is

then required to apply the following factors in determining the weight to be given a treating physician's opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. ..." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). In this regard, the administrative law judge is required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating physician's assessment. *See* 20 C.F.R. §404.1527(d)(2),(4). Even where the administrative law judge declines to accord controlling weight to the opinion of a treating physician, the administrative law judge "must still determine how much weight is appropriate. . . ." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). Moreover, an administrative law judge must provide "good reasons" for discounting the opinions of a treating physician, *i.e.,* reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, at 242, citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

The United States Court of Appeals for the Sixth Circuit recognized in *Wilson* that reversal may not be required if a failure to give good reasons for rejecting the opinion of a treating source has been only *de minimis*, or harmless error. *Wilson,* 378 F.3d at 547. The Court cautioned, however, that the inquiry cannot mean merely that the plaintiff "'had little chance of success on the merits anyway.'" *Id.,* at 546 (quoting *Mazaleski v. Trubell,* 562 F.2d 701, 719 n.31 (D.C. Cir. 1977). Rather, the Sixth Circuit recognized three categories of cases in which the failure to strictly follow the requirements of the regulation may not warrant reversal: (1) "If a

10

treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "If the Commissioner adopts the opinion of the treating source and its findings consistent with the opinion"; or (3) "Where the Commissioner has met the goal of §404.1527(d)(2) -- the provision of the procedural safeguard of reasons -- even though she has not complied with the [express] terms of the regulation." *Id.*, at 547.

This Court finds that the administrative law judge failed to properly and thoroughly evaluate the opinions of plaintiff's treating physicians. Dr. Kirk is a specialist in occupational medicine, Dr. Yunker is a pain specialist and Dr. Fitz is a specialist in physical medicine and rehabilitation. It is not clear that any of the physicians upon whose opinion the administrative law judge relied are comparably qualified. Moreover, although the administrative law judge clearly rejected the opinions of disability expressed by plaintiff's treating physicians, he did not expressly indicate how much weight, if any, he accorded their opinions. Furthermore, although the administrative law judge appeared to base his rejection of the opinions of disability primarily on the lack of objective evidence, he failed to expressly consider the impact, on plaintiff's subjective complaints, of plaintiff's documented severe mental impairment, identified by the administrative law judge as a pain disorder associated with psychological factors and a general medical condition. Finally, even the Commissioner concedes that the administrative law judge failed to expressly consider and evaluate the opinion of Dr. Kirk, one of plaintiff's treating physicians. The Court does not regard this oversight as harmless in light of the overwhelming consistency of the opinions of all of plaintiff's treating physicians, and the contrary opinions articulated by the non-treating, and in some

11

instances, non-examining physicians upon whom the administrative law judge relied.

Under these circumstances, the Court concludes that the decision of the Commissioner is not supported by substantial evidence.

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed and that the matter be remanded to the Commissioner for consideration of the opinions of plaintiff's treating physicians.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation.* See *Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

                                   *s/Norah McCann King*
                                    Norah M$^c$Cann King
                         United States Magistrate Judge

January 3, 2012
Date